### MULVEY v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

1. MUNICIPAL CORPORATIONS—USE OF STREETS—PILING BUILDING MATERIAL —PERMIT—CONSTRUCTION.

Where a permit from municipal authorities to place building materials in the street so as to occupy one-third of its width further provided that no material should be placed within two feet of any railroad track, the provision as to having material near railroad tracks limited the provision granting the right to use one-third of the street, so that the builder was not entitled to use that portion of the street if its use resulted in placing materials within two feet of a railroad track.

2. SAME—EXCEEDING PERMIT—NUISANCE.

Where a builder obtained a permit to pile building material in a certain portion of a street, materials placed in any other portion constituted a nuisance.

3. SAME—OBSTRUCTION IN STREET—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against a building contractor for personal injuries caused by a truck driven by plaintiff coming in contact with building material unlawfully piled in the street, evidence *held* sufficient to justify submission to the jury of the question of plaintiff's contributory negligence.

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by John Mulvey against the city of New York and another. From a judgment for plaintiff, the Tide Water Building Company, defendant, appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

Frank Verner Johnson, for appellant.

Emanuel S. Cahn (Edward Lazansky, on the brief), for respondent.

LAUGHLIN, J. This is an action for personal injuries alleged to have been sustained through the negligence of the appellant. On Monday, the 25th day of August, 1902, about noon, the plaintiff was driving a single truck loaded with iron southerly on Ninth avenue. The gear of the truck was six feet eight inches. The left or easterly wheels were traveling in the groove of the easterly rail of the southbound street railway track, and the path of the right or westerly wheels was about one foot and eight inches westerly of the westerly rail. As the wagon reached a point a little north of an elevated railroad pillar

on the westerly side, about 84 feet northerly of Thirteenth street, the right-hand front wheel came in contact with the end of an "I" beam, which projected from the westerly side of the street at right angles towards the street railway track, and the plaintiff was precipitated from his seat to the pavement, sustaining the injuries to recover for which the action is brought.

The appellant was erecting a building at the northwest corner of Ninth avenue and Thirteenth street, and the surface of the street between the elevated pillars on the west and the westerly line of the street was occupied with building material, placed there under its supervision for use in the construction of the building. It had on the 2d day of June, 1902, obtained a permit from the proper authorities to use one-third of the width of the carriageway of the street for placing material "near the curbstone, and directly in front of said premises." This permit was in force at the time of the accident. The carriageway of the avenue was 60 feet in width. The permit, therefore, did not authorize the placing of material in the street more than 20 feet from the westerly curb. The permit also expressly provided that no material should be placed "within two (2) feet of any railroad track." The evidence shows that the distance from the westerly curb to the nearest car track was 22 feet and 6 inches. The base of the elevated pillar was 2 feet 6 inches square, and the distance from the base of the pillar to the westerly rail of the track was 2 feet 6 inches. The provision of the permit, prohibiting the placing of material within 2 feet of any car track, was a general provision. It was intended as a limitation upon the permit in case there should be a car track within the space covered by the permit, or within 2 feet thereof; and it should not be construed as an extension of the permit to authorize the appellant to occupy more than 20 feet of the carriageway measured from the curb. The appellant, therefore, had no authority to place any material within 2 feet 6 inches of the westerly rail of the westerly street railway track, and any material nearer the track than 2½ feet, being unauthorized, constituted a nuisance. It is evident that this "I" beam was placed considerably nearer the track than authorized by the permit, for, unless it was within 1 foot and 8 inches of the rail, the wheel of the plaintiff's vehicle would not have come in contact with it. There is evidence indicating that it projected to within one foot of the rail; that it had been in that position for two days; that it was within one foot of the ground; that other beams were piled over it one or two feet higher; and that they extended about to, but not beyond, the pillar. Placing or allowing the "I" beam to be placed within that distance of the car track constituted an unlawful obstruction, and was a menace to travel. The negligence of the appellant, therefore, was clearly established, and is not questioned on this appeal.

The contention that the plaintiff was guilty of contributory negligence is not free from doubt, but we are of opinion that it was a question for the jury. This was the plaintiff's first trip along the avenue that day, but he had driven down the avenue two or three times a day for nearly a week before the accident, excepting Sunday, with the same truck and in the same manner. He testified that on each other occasion he noticed

the building material piled in front of the premises upon which the appellant was erecting the building, and did not come into collision therewith, and says that on Saturday before the accident, in passing, the track was free from obstruction, and that they had no trouble in passing. The plaintiff was sitting on a seat about three feet above the floor of the truck, and near the front end.  He testified that he was driving on a walk, and that as he approached the point of the accident he observed a wide truck coming up on the easterly street railway "pretty lively," but that it passed him some distance north of where the accident occurred, and that after the truck passed the way was clear, with the exception of the building material, but that he did not observe this "I" beam until he was falling from the seat.  That "first, as I came along down the street, this building material that I saw at my right hand I didn't pay any attention to at all; so that I have no idea, and I cannot tell you, how high those beams were piled.  I could not tell how close they were to the track.  As to how close I drove to this pile of building material—my left side of the truck—my wheel was on the outside of the track, and that is all.  I couldn't tell you how close this material was to the rail, or anything about it.  I don't know how far away that pile of building material was from my truck as I drove by it.  I didn't pay any attention to it."  Upon the plaintiff's own testimony, there is room for argument that the truck had passed in time for him to observe the location of the building material, but his evidence is open to construction that he did not observe the precise location of the building material, owing to the fact that his attention was diverted by the passing truck, from which there might have been a collision, and the jury were justified in so finding on his evidence.  With respect to the place where he met the truck, he further testified:   "I said something about a truck approaching me in the opposite direction; it was very close to where the accident occurred;" and after testifying that the truck passed him before the accident, he further testified on that subject that he was looking ahead to see the truck.  "At the time the accident happened, the other truck had just passed me up.  About how far, I couldn't tell you—just passed me by."   He also testified that the street cars were not then and had not been running on the avenue, so that vehicles had the uninterrupted use of the tracks.  On his direct examination he testified:

"I was on the seat of this wagon, driving along and looking, as I thought that everything was clear.  I was driving along.  The first thing I knew I ran against something, and I gets heaved off, and I didn't know no more."

In view of the fact that this building material was unlawfully placed in a position to endanger travel along the street railway track, which is a customary line of travel for vehicles as well as street cars, and of the fact that the plaintiff had recently, on many occasions, passed it without difficulty, and that this "I" beam was near the ground, and projected far beyond the others above in the pile, and of the fact that plaintiff's attention was diverted by the passing truck, we are of opinion that it cannot be said, as matter of law, that he was guilty of contributory negligence.

It is claimed that the court erred in refusing to charge a request presented by counsel for appellant.  The request was as follows:

"I ask you to charge the jury that the application of the rule your honor refers to, that a man has a right to assume that the street is unobstructed and safe, does not apply to a case where a man knows that there is building material in the street as he is passing by. Where he knows that the street is obstructed by building material, he is under obligation to use more ordinary care than the individual."

In answer to this request the court said:

"Further than I have charged I decline to charge on that, except to say that where it is shown that the party knows there is building material, that fact will be taken into consideration by the jury in determining the amount of care which he should have exercised under that particular circumstance. A street which is not obstructed by building material is quite different from a street that has people passing through it free from obstructions; that is to say, the amount of care a person passing through it must exercise, under the circumstances would be affected somewhat by the knowledge that there was building material in the street."

Counsel for the appellant thereupon duly excepted.

We are of opinion there was no error in this refusal to charge. The request was unintelligible. It may be that the stenographer has omitted something from the request, but, the case having been settled in this form, we must assume that the record shows it as it was presented to the court. Moreover, the remarks of the court in denying the request properly stated the rule, and the jury were, we think, fully instructed.

It follows, therefore, that the judgment and order should be affirmed, with costs. All concur, except McLAUGHLIN, J., who dissents.

McLAUGHLIN, J. (dissenting). I am unable to concur in the prevailing opinion. The plaintiff failed to establish his own freedom from negligence. The accident occurred in the middle of the day. The plaintiff had frequently been over this street prior to the accident, and knew that building material was there piled. There was nothing to obstruct his vision nor distract his attention, and it is perfectly obvious that, had he exercised the care which the law required of him, the collision which caused his injury would have been avoided. To permit a jury under such circumstances to determine whether or not he was guilty of negligence was to permit them to make a finding without evidence to support it.

I vote to reverse the judgment and order a new trial.